This morning is John Cannici v. Village of Melrose Park Good morning. May I please the court? Ruth Major on behalf of the appellant John Cannici. Mr. Cannici was a firefighter with the Village of Melrose Park for 16 years. He never had any disciplinary issues. He had an unblemished record. He grew up in Melrose Park as well. His complaint in federal court alleging due process and equal protection violations was dismissed on a 12 v. 6 motion to dismiss by the trial court. There are three errors that led to the decision to dismiss his case. And I'll address them one at a time. The first error in the trial court's decision involved the issue of whether or not Mr. Cannici was entitled to due process before being terminated. Because, as I'll address later on in the argument, he raised an argument that he did not receive due process because of the bias of the panel. In Loudermill, in Cleveland, I'm sorry. Ruth Major, Mr. Cannici was provided a hearing before the board in this case in which he filed a motion challenging the ex parte communications. He was represented by counsel. Why isn't that the notice and opportunity to be heard that is required by the due process clause? If he believed that the board was wrong in its decision or was biased, was there an opportunity to raise that in an administrative review action? And if there was, why isn't that process sufficient to satisfy the Constitution? Well, the Supreme Court in Loudermill held that an employee has a right to due process before termination, regardless of how robust, to the extent the administrative proceedings are considered robust, which is another issue. But an employee has a right to the minimum due process protections before termination. In this case, Mr. Cannici alleged that the tribunal was biased and in his complaint he alleged that the attorney for the board was ex parte providing case law concerning the main issues in this case to the prosecuting attorney. And there are other communications as well, ex parte, between the prosecuting attorney and the board attorney. The attorney was counsel to the board. He's part of the board. Is there any knowledge that the board members themselves engaged in any improper communications? Well, the counsel for the board, under Illinois law, is considered part of the board. I mean, he is part of the board. Or a member. I'm sorry? The counsel is not a member of the board. Well, the counsel is, the attorney is providing legal advice to the board and under Illinois law is considered part of the board. I'm not asking you that. I am, again, going to ask you, is counsel a board member? No, he's not a board member. He's not a board member. So the facts that were alleged in the complaint were that there were these ex parte communications between the counsel for the board and the prosecuting attorney. The ruling on the motion to recuse either the panel or the attorney or the prosecuting attorney was denied without argument. It was summarily denied. And then the board went on to have a hearing with one witness, Mr. Canici, no witness impeaching him. All the favorable testimony he provided was disregarded in the ruling. Testimony he provided was misrepresented in the ruling. And any inferences that could be drawn, even from testimony that wasn't disputed, was drawn against Mr. Canici.  and that he was denied due process. This court in Schacht v. Wisconsin Department of Corrections recognized that on a motion to dismiss where there's allegations of that nature, the case should proceed, discovery should take place, and then at a later date, when all the evidence has been obtained to fully explore the issues, the court can determine whether there is sufficient evidence to find bias or not find bias. But this complaint alleged, from the beginning to the end, that there were ex parte discussions and that this board, there was no evidence contrary to Mr. Canici's testimony and no evidence that he had any intent not to remain a resident. The court did not follow Illinois, ignored his testimony. That communication between the counsel for the board and the prosecutors seemed to have consisted solely of three cases regarding procedural requirements for scheduling an agreed hearing and residency issues. Well, he was sending to the prosecuting attorney the seminal Illinois appellate decision addressing residency ordinance in the employment context. He sent him the main case on this issue, and it's the equivalent of a judge ex parte giving one of the attorneys some case law to help them, a prosecuting attorney, case law to help them prosecute a case. And I don't believe, under a U.S. Supreme Court decision and this court's decision, decisions that that is a fair trial. That's not a fair hearing. And under Loudermill, he's entitled to the minimum protections of due process before termination. It's not okay to say, oh, he didn't get it, you know, but we'll make up for it on the back end. Loudermill is very clear. Termination of employment is a very, very significant event. It deprives somebody of their livelihood, and they have a right to have due process before. Now, one of the other errors in the court's decision was that the court determined that Mr. Canici was not entitled to due process before termination under the Supreme Court's random and unauthorized analysis. But that analysis has been limited to very special cases where there is no state procedure to govern the deprivation and where the government has no way to predict that a deprivation will occur. It's been reserved for cases where the Supreme Court has said, and this is a quote, it's impossible for the government to predict that there will be a deprivation. It is not, under controlling case law, which in this case is the Zinnerman case, random and unauthorized is not appropriate where the deprivation occurs through a government proceeding. Now, the lower court, I believe, and some courts have done this, have said that, well, the abuse of discretion is not predictable. The government couldn't predict that the board's counsel would be, you know, that kind of thing, would be doing these kinds of things or ignoring the law. What the Supreme Court in Zinnerman said, that's not the focus. The focus is whether the deprivation could be predicted to occur, not whether the misconduct, the abuse of authority, by the government official was unpredictable because that's almost always going to be unpredictable. So Zinnerman is controlling here, and this court has followed Zinnerman, has followed the Zinnerman analysis as well in Armstrong v. Daly. In Armstrong v. Daly, this court acknowledged that random and unauthorized is not talking about a case where there's a state procedure, but the official abuses its authority, and that wasn't predicted. So in this case, whenever there's a state procedure under Zinnerman, whenever there's a state procedure, and there is an abuse of due process, it is not random and unauthorized, and Zinnerman is very clear on that point. But the court just said it's random and unauthorized, I think, because the conduct was not predictable, that the panel would abuse its authority. The third basis for overturning this is the equal protection claim. The court found that Mr. Canicci was not entitled to equal protection in the employment context. The seminal Supreme Court decision on that is Inquist, Inquist v. Oregon Department of Agriculture. Mr. Canicci was not an Atwell employee. Mr. Canicci was protected from arbitrary terminations by state law. He could only be terminated for cause. Mr. Canicci was not terminated because of your sort of typical discretionary, I don't think you hook up the hose right, or I don't like the way. He was terminated based on an ordinance, based on a law. The Inquist case deals with a case where the employee is an Atwell employee who is terminated for purely discretionary reasons, not based on an ordinance. In Inquist, they go to great pains to talk about what they're trying to do there is balance equal protection rights in employment, and the case law is clear that when you go to work for a public employer, you don't leave your constitutional rights at the door. You bring them in and they apply at work. The question in Inquist was does equal protection, are concerns about equal protection outweigh the principles of Atwell employment? The whole case was about Atwell employment, and the court said that they put weight and they put importance on Atwill, and they said because it's Atwill, we're not going to apply equal protection here, and they went on and said in this case, in this context, and they had lots of caveats about this case, but the whole case was about one, that it was Atwell and balancing equal protection against Atwell, and two, it was about that it was a discretionary termination, not based on an ordinance or a law like in the OLEC decision, which is another Supreme Court decision that we address in the briefs, and the Inquist court talked a lot about OLEC. In OLEC, a single person brought an equal protection claim against their village because an ordinance was not being applied fairly to them. So you're saying then that he wasn't terminated because of his lack of residency then? He was terminated because of his lack of residency is what they said, but that is not a subjective test. They applied objective criteria there. The criteria they looked at was where did he sleep? Where did his family live? Where was his property? That's objective criteria, and the Inquist decision goes through similar cases where there's an ordinance which may at first blush appear to be discretionary, but the criteria that's looked at is objective criteria, and the court said because it's objective criteria and it's an ordinance, equal protection does apply. That was OLEC and the other cases that are addressed in Inquist. Now, in this case, you know, we're saying that that same kind of criteria, there are people that work for the fire department and still work for the fire department, as we understand it, who don't even live in Illinois. Their families live in Wisconsin or they live in other towns far away, and they're still there because of their relationship, their business dealings with the mayor. They're still there, but Mr. Connici was terminated, and this court has... Where, Ms. Major, in the complaint are there allegations that persons who did business with the mayor were allowed to bypass the residence requirement or any allegation that he was treated differently on that basis? Your Honor, I can show. I'll find them during my break, and it's okay if I can cite to them and rebuttal. There are many, many allegations. You don't have any time for rebuttal if you keep talking. I know. That's why I'm trying to stop. And I just want to say Epkirian v. McDonald was the case where the Seventh Circuit acknowledged that Inquist is talking about not cases with ordinances and discretionary decisions, and I think I have one minute left, so thank you. May it please the court. Austin Zimmer on behalf of the appellees. Mr. Connici is a white male. He's not a member of protected class. Prior to his termination for violating the Village of Melrose Park's residency ordinance, he was given written notice of the charges. He was provided an opportunity to tell his story with his lawyer. He told his story, and he testified for about three years. He slept every night in Orland Park, not in the Village of Melrose Park. After his termination, he filed an action under the Illinois Administrative Review Act. For those reasons, he's unable to successfully plead any constitutional claims against the Village. The district court's decision to grant our motion to dismiss was proper, and this court should uphold this decision. Let's start with the due process. As this court is well aware, under the Loudermill decision, all that's required under the due process clause is a pre-termination notice and post-termination procedures. Clearly here, Mr. Connici was given pre-termination requirements. He was given much more than even Loudermill requires. He was given notice of the hearing. He was given written charges. He was allowed to present his evidence with his lawyer. Was this three-year time period part of this pre-termination? When was the Village, or whatever it is, aware of his living somewhere else? Sure. Sometime, I believe, around 2014 or 2015, the Village started investigating residency violations of its police officers and its firefighters. In general, they were doing? They were generally investigating it. When they ran across his name, at what stage of the termination was? How long before he was actually terminated? Approximately 2016. They call him in and they say, hey, what's going on? We think you live out of town. They ask him some questions. After that brief interview, then they give him written charges. Then he's presented with the written charges. He's allowed to retain his lawyer, and then he has the hearing in front of the Board of Fire and Police where he's allowed to present his case, where he's given the opportunity to state his story and explain why he shouldn't have been terminated. That's in 2016? Yes. Okay. So it's not that, in hindsight, they find out this was going on for three years? Is that what you're saying? This is the testimony of Mr. Kenichi from the hearing. He admitted that from 2013 to 2016, that he slept every night in the Orland Park home and not the Village of Melrose Park residence. But he maintained some kind of residence in the basement of the house that he rented or gave or whatever to somebody else, another family? That was his way to try to comply what he thought was complying with the residency ordinance. He rented out the house. He had space available, supposedly, in the basement, but he never slept there, and he was collecting rent. Besides the pre-termination requirements, Loudermill requires some sort of post-termination procedures. Here, the Illinois Administrative Review Act provided Kenichi with the post-deprivation remedy that is required under the law after he was terminated. In fact, he filed a lawsuit under that act, and following a district court's dismissal of the Section 1983 claims, the Administrative Review Act was remanded to state court. The Administrative Review Act provides a remedy for the sort of due process violation that's alleged here. The fact is the opportunity to litigate... In other words, if Mr. Kenichi believed that the board was biased against him, there was an avenue available for him to appeal that board determination in which he could assert the claim of bias. Is that correct? You are 100% right, Your Honor. And the law is clear on that. A biased decision-maker at a pre-termination hearing doesn't violate due process as long as there's an adequate post-deprivation hearing by an unbiased decision-maker. And that's the Mikulich case that this court decided, and the facts in that case are very similar. That dealt with Bedford Park, and there was a hearing before the board, the board of trustees, and in that case, the plaintiff alleged the board was biased against him. And this court said clearly that a biased decision-maker at a pre-termination hearing won't violate the due process as long as there's adequate post-deprivation hearing. And in this case, there was an adequate post-deprivation hearing, and that's the Illinois Administrative Review Act, which plaintiff filed an action under, which was remanded to state court, and which plaintiff had a hearing act. And in December of last year, the circuit court judge upheld the decision to terminate Mr. Kenichi. And what's important is that these administrative review actions, you're allowed to bring the whole record in. And one of the things you're allowed to bring in is bias. So this was addressed, and they were given an opportunity to address the issue of bias. But another important point is there was no allegation that the board was actually biased. The allegations of bias had to do with the board's attorney. The board's attorney was not a decision-maker. The board's the decision-maker. The motion to disqualify that Mr. Kenichi brought, it was to disqualify the board's counsel, not the board. So even if that motion would have been granted, it would be the board that was still making those decisions. Kenichi also takes issue with the district court's characterization that this was a random and unauthorized decision. Again, I would point the court to its own decision in the Mikowitz v. Bedward Park case. That was a very similar case where there was an allegation of bias. And that's why due process was violated, because of bias. And in that case, this court stated that biased decision-makers are properly characterized as random and unauthorized. The district court's decision in our case to conclude that this was random and authorized was supported by the case law. If you review plaintiff's complaint, the other type of procedural due process claim is those based upon established state procedures. The allegations regarding due process in the complaint are only about four paragraphs long, and there's no allegations that Mr. Kenichi's rights were violated by an established state procedure. And the reason why he didn't allege that is because he can't. There's no way you can allege any deficiencies with the process. He was given all the opportunities that are required under law to be heard to tell a side of this story, and then he was given an opportunity under the Illinois Administrative Review Act to appeal those decisions. So this was clearly random and unauthorized decision, and the district court's characterization of that was proper. Also, Mr. Kenichi takes issue with the alleged ex parte discussions and states that's another reason that deprived him of a fair hearing. First, I would submit that even if these communications did deprive him of a fair hearing, because there was adequate post-deprivation remedy under the Illinois Administrative Review Act... I understand that the conversation only had to do with discussions and points of law. Sure, and what it was discussions not between a decision maker, not between a board member, between the attorney. And what it was, it was at the first hearing, and under state law you have to proceed to the hearing in 30 days, and it was case law about that, and there was a conversation about there's a new residency case that came out, and he forwarded it to the board's attorney, forwarded it to the prosecutor. The prosecutor then forwarded it on to Kenichi's attorney. It had nothing to do with the substantive decision. The decision was made by the board, not the board's attorney. If you review the transcript from the hearing, the board's attorney did not sustain any objections against Mr. Kenichi. This issue was ruled upon at the Illinois Administrative Review hearing in the circuit court in December, and Judge Cohen in that case, he concluded that these weren't ex parte conversations because ex parte communications need to be made between a decision maker and an interested party. Mr. O'Connor, the board's attorney, was not a decision maker. Who is that? I'm sorry, you said a judge? Was this an administrative judge of some kind? This is a Cook County Circuit Court judge, so the Illinois Administrative Review claimed that Judge Buckle remanded to state court. That's been proceeding while this case has been on appeal, and in December he ruled on their Illinois Administrative Review all claim and he sided with the village and upheld the termination of Mr. Kenichi. I guess that was an appealable decision. They have filed a motion to reconsider, and that's pending before the circuit court now. As to equal protection, Kenichi's allegations do not involve an equal treatment as a result of a membership in a protective class. They can't. He's a white male. The Inquis case makes it clear that a class of one claim, it has no place in the public employment context. As recently as October of last year, this court held in Ford v. City of Chicago that disputes related to a public employee's interactions with superiors never, that's the key word, never may be litigated under the equal protection clause. To allow such claims would impact the ability of a government to function because every single hiring and firing and transfer decision by a government employer would be subjected to constitutional scrutiny. Mr. Kenichi does not have an equal protection claim. Counsel cited in her argument to Olick. Olick is a case that did not involve an employee of the government. Olick involved a case where it was a citizen of the government, and that citizen was being treated with regards to water rights differently than other citizens, very different than public employees. And that's the key for this course analysis and why Judge Buckle granted our motion to dismiss the equal protection claim because Mr. Kenichi is a government employee and he cannot bring a class of one claim. Accordingly, Mr. Kenichi does not have any viable constitutional claims he can bring against any of the defendants. Judge Buckle's decision was proper under the law and would respectfully request that this court uphold the district court's decision. Thank you, counsel. Thank you. You have 52 seconds. Okay. First, in response to your question, Judge Rovner, paragraph 73 through 89 of the complaint in paragraph 107 lists the number of employees we knew of pre-discovery who did not live in the state or in Melrose Park. Their families didn't live there. Their kids went to schools in different states, and they still work there. Mr. Kenichi does not. They had business relationships with the mayor. Mr. Kenichi did not. The state law that was before the board is a decision that's maxim that involves Mayor Rahm Emanuel, and in that case the Illinois Supreme Court held that you have to have, once the residency is achieved, accomplished as it was here, you have to have physical absence plus intent not to retain your residency. You have to have both. Physical absence isn't enough. And the issue in the hearing before the board was there was no evidence of this intent. May I wrap it up? Okay, wrap it up. And then with regard to the bias, the Supreme Court has said in Logan v. Zimmerman, as well as in the case, these are cases addressed in the brief, and in Withrow v. Larkin, that having your matter fairly judged. You're not racking it up. What's that? You're not racking it up. You're just going on with your argument. Oh, I'm sorry. That was my last point, just that those two decisions say a fair decision-maker is an absolute requirement of due process, and Withrow involves the administrative setting. It's always got to be there for due process. This decision should be reversed, and I appreciate your time. Thank you very much. The case will be taken under advisement. Thank you to both counsels. Judge Fowler, may we take a break, please? We may. Carl, we'll take a brief recess.